Michael Watton
Utah Bar No. 15806
Attorney for Plaintiffs
WATTON LAW GROUP
405 South Main Street
Suite 875
Salt Lake City, UT 84111
Tel.: (801) 363-0130
Email: mwatton@wattonlawgroup.com

Jordan Lewis (to be admitted *pro hac vice*)
Attorney for Plaintiffs
JORDAN LEWIS, P.A.
447 N.E. 11TH Avenue
Fort Lauderdale, FL 33334
Tel.: (954) 616-8995
Email: jordan@jml-lawfirm.com

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| KEVIN M. TRAVER, individually and on behalf of similarly situated individuals;<br><br>Plaintiffs,<br><br>v.<br>ACQ HOLDINGS, LLC, d/b/a<br>EASY CASH ASAP and EASY CASH ASAP, LLC, both Kansas limited liability companies;<br><br>Defendants. | **COMPLAINT**<br><br>CASE NO. 2:20-cv-00608-DAO<br><br>**PROPOSED CLASS ACTION**<br><br>Jury Trial Demanded<br><br>Magistrate Judge Daphne A. Oberg |

Plaintiff Kevin M. Traver, brings this action on his own behalf and on behalf of all others similarly situated, and asserts to the best of his knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the following:

**INTRODUCTION AND NATURE OF THE ACTION**

1.      This lawsuit, brought by plaintiff Kevin M. Traver on his own behalf and on behalf of all others similarly situated, challenges the defendant's almost incomprehensibly sloppy treatment of confidential financial information. Defendants' acts expose the confidential financial information of plaintiff and the Class and Subclass to the entire internet, without any safeguard or protection, and for no reason, without justification or permission.

2.      This action seeks damages arising from defendant's practices, along with an injunction requiring defendants to protect the financial information it collects from plaintiff and the Class and Subclass.

## JURISDICTION AND VENUE

3.　　This Court has jurisdiction of this class action through 29 U.S.C. § 1332(d) in that the matter in controversy exceeds the value of $5 million and a member of the class of plaintiffs is a citizen of a state different from any defendant.

4.　　This Court also has jurisdiction through 28 U.S.C. § 1331, in that the resolution of this matter depends, at least in part, on the application and interpretation of federal statutes.

5.　　Venue is appropriate in this judicial district because the plaintiff, and other members of the plaintiff Class and Subclass, are citizens of Utah and reside within this district, and at least some of the breaches complained about occurred here.

## PARTIES

6.　　Plaintiff Kevin M. Traver resides in Salt Lake City, Utah, and is a citizen of Utah. Traver works full-time as a software engineer.

7.　　Defendant ACQ Holdings, LLC is a limited liability company with headquarters located in Overland Park, Kansas. ACQ Holdings, LLC is a citizen of the state of Kansas.  ACQ Holdings, LLC does business under the names "Easy Cash ASAP," "Easy Cash ASAP LLC," and "easycashasap.com." In this Complaint, ACQ refers to the named defendants and all parent, subsidiary, predecessor, successor and related entities to which these allegations pertain.

**FACTS**

**8.**    ACQ is an internet lender.

**9.**    On July 17, 2020 Traver received an unsolicited email advertising ACQ's loan services. The loan services were to be provided through EasyCashASAP. The email contained a link. Traver clicked on the link and was taken to the easycashasap.com website.

**10.**    The first page is a landing page. Among other things, the website informs:

- That "Easy Cash ASAP" is not a lender in all states.
- That loan rates and terms may vary.
- That APR is not to exceed 675%.
- That if the loan is not approved, ACQ may provide user-submitted data to various brokers to match with unaffiliated lenders.
- That Easy Cash ASAP is a brand owned by ACQ, which operates in Kansas.
- That ACQ Holdings, LLC is an affiliate partner but does not originate or issue any loans.

**11.**    By hitting the "apply" button on the website's landing page, Traver landed on a second page that requested data, including personal information such as his Social Security number, income, employer, and bank information. The fine print on that page provides that, by using the site, Traver has agreed "to the terms of use and privacy notice."

**12.**    Those terms are located elsewhere on the site. The terms state that the party providing the policy is not Easy Cash ASAP, a brand of ACQ Holdings, but Easy Cash ASAP, LLC, a subsidiary of ACQ Holdings, LLC.

**13.**    Once an applicant begins the process of attempting to qualify for a loan, that applicant is assigned an account number. When the applicant receives regular emails, the account number is nothing more than a sequential system for each application from any

applicant.  When an applicant clicks to review the application, the account number is found in a public URL that immediately populates.

14.    Anyone can type random seven-digits into this public URL feature and – if it happens that those seven digits are assigned as an account number to a loan applicant – then the person entering the random digits has access to the loan applicant's name; date of birth; address; Social Security number; home phone number; cell phone number; email address; employer name and phone number; next pay date and pay frequency; monthly income; bank name; bank account type; bank routing number; bank account number; and military status.

15.    All of this is private financial information. In the wrong hands, this information could be easily used to commit bank fraud, credit fraud, identity fraud, and worse.

16.    Making matters worse, if the loan applicant realizes – as Traver did – that ACQ's website has no protection against private data theft, there is no way to remedy the problem. Traver tried, but was unable, to remove the private financial information he provided to ACQ to support his loan application.

17.    ACQ operates in Utah, Wisconsin, Missouri, Texas, South Carolina, and – possibly – Kansas. A review of the ACQ database reveals that there are at least 120,000 loan applicants who have supplied information to ACQ as part of their loan application process. Every

one of those persons' private financial information is now exposed on the internet due to the failures of the ACQ website.

18.      A simple security review of the website design would have revealed this design flaw.

**CLASS ALLEGATIONS**

19.      ***Definition of the Data Breach Class.***  The Data Breach Class, as defined under Federal Rule of Civil Procedure 23(a)(1)-(4) and (b)(1), (b)(2) and/or (b)(3), consists of all persons who, at any time after six years before the commencement of this action, supplied their personal financial information to ACQ on its website to support their loan application.

20.      The Utah Subclass consists of all persons who listed with their loan application Utah as their state of residency and who, at any time after six years before the commencement of this action, supplied their personal financial information to ACQ on its website to support their loan application.

21.      ***Size of Class.***  The Class and Subclass consists of hundreds, and perhaps thousands, of persons, rendering joinder of all members of the Class and/or Subclass impracticable. The disposition of the claims in a class action will benefit both the parties and the Court.

22.      ***Class Representative Traver.***  Named plaintiff Traver provided confidential financial information to ACQ to support his loan application before he realized that the website

exposed the information without protection. Traver is a member of both the Class and Subclass
will fairly and adequately represent the interests of the Class and Subclass.

23.    ***Common Questions of Law and Fact.*** This action requires a determination of
whether ACQ's data protections violate common law, contractual and/or statutory duties it owes
to Class and Subclass members, and if they violate those duties what is the appropriate monetary
and injunctive remedy.

24.    ***Separate Suits Would Create Risk of Varying Conduct Requirements.*** The
prosecution of separate actions by Class and/or Subclass members against ACQ would create a
risk of inconsistent or varying adjudications with respect to individual class members that would
establish incompatible standards of conduct.  Certification is proper under Rule 23(b)(1).

25.    ***ACQ Has Acted on Grounds Generally Applicable to the Class.*** ACQ, by
exposing all the private financial information of all class and subclass members, has acted on
grounds generally applicable to the Class and Subclass, rendering declaratory relief appropriate
respecting the class and subclass.  Certification is proper under Rule 23(b)(2).

26.    ***Questions of Law and Fact Common to the Class Predominate Over Individual
Issues.*** The claims of the individual class members are more efficiently adjudicated on a class-
wide basis.  Any interest that individual members of the class may have in individually
controlling the prosecution of separate actions is outweighed by the efficiency of the class action
mechanism.  Upon information and belief, there is no class action suit filed against ACQ for the
relief requested in this action. This action can be most efficiently prosecuted as a class action in
this district, where ACQ does business, and where Traver resides.  Issues as to ACQ's conduct in
applying standard policies and practices towards all members of the Class and Subclass

predominate over questions, if any, unique to members of the class and subclass. Certification is therefore additionally proper under Rule 23(b)(3).

27.  **_Class Counsel._**  Traver has retained experienced and competent class counsel.

**LEGAL CLAIMS**

**<u>Count 1</u>**
**Negligence**
**By Data Breach Class and Utah Subclass**

28.  Traver restates paragraphs 1 – 27 above as if fully set forth.

29.  Traver's first legal claim is for negligence. It is brought on behalf of the Data Breach Class and Utah Subclass.

30.  ACQ owed a duty to Traver and Class and Subclass members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting their personal financial information in its possession from being compromised, lost, stolen, accessed and misused by unauthorized persons. More specifically, this duty included, among other things: (a) designing, maintaining, and testing a website  security system to ensure that Traver's and Class members' and Subclass members' personal financial information in ACQ's possession was adequately secured and protected; (b) implementing processes that would detect a breach of its security system in a timely manner; (c) and maintaining data security measures consistent with industry standards.

30.  ACQ had a common law duty to prevent foreseeable harm to others. This duty existed because Traver and Class and Subclass members were the foreseeable and probable victims of any inadequate security practices. It was readily foreseeable that Traver and Class and Subclass members would be harmed by the failure to protect their personal financial information

because hackers routinely attempt to steal such information and use it for criminal purposes, ACQ knew that it was more likely than not Plaintiffs and other Class members would be harmed.

31.    ACQ's duty also arose under Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect personal financial information by companies such as ACQ. Various FTC publications and data security breach orders further form the basis of ACQ's duty. In addition, individual states have enacted statutes based upon the FTC Act that also created a duty.

32.    ACQ breached the duties it owed to Traver and Class and Subclass members described above and thus was negligent. ACQ breached these duties by, among other things, failing to: (a) exercise reasonable care and implement adequate security systems, protocols and practices sufficient to protect the personal financial information of Traver and Class and Subclass members; and (b) maintain security systems consistent with industry standards.

33.    But for ACQ's wrongful and negligent breach of its duties owed to Traver and Class and Subclass members, their Personal Information would not have been compromised.

34.    As a direct and proximate result of ACQ's negligence, Traver and Class and Subclass members have been injured as described, and are entitled to damages, including compensatory, punitive, and nominal damages, in an amount to be proven at trial. Traver's, Class members' and Subclass members' injuries include:

- theft of their personal financial information;
- costs associated with requested credit freezes;
- costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts;
- costs associated with purchasing credit monitoring and identity theft protection services;

- unauthorized charges and loss of use of and access to their financial account funds and costs associated with inability to obtain money from their accounts or being limited in the amount of money they were permitted to obtain from their accounts, including missed payments on bills and loans, late charges and fees, and adverse effects on their credit;
- lowered credit scores resulting from credit inquiries following fraudulent activities;
- costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the defective ACQ data control — including finding fraudulent charges, cancelling and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts;
- the imminent and certainly impending injury flowing from potential fraud and identify theft posed by their personal financial information being secured by criminals;
- damages to and diminution in value of their personal financial information entrusted, directly or indirectly, to ACQ with the mutual understanding that ACQ would safeguard Traver's and the Class's and Subclass's data against theft and not allow access and misuse of their data by others; and
- continued risk of exposure to hackers and thieves of their personal financial information, which remains in ACQ's possession and is subject to further breaches so long as ACQ fails to undertake appropriate and adequate measures to protect Traver and the Class and Subclass.

## Count 2
### Negligence *Per Se*
### By Data Breach Class and Utah Subclass

35.     Traver restates paragraphs 1 – 27 above as if fully set forth.

36.     Traver's second legal claim is for negligence *per se*. It is brought on behalf of the Data Breach Class and Utah Subclass.

37.     Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(a)((1), prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the Federal Trade Commission ("FTC"), the unfair act or practice by companies such as ACQ of failing to use reasonable measures to protect personal financial information. Various FTC publications and orders also form the basis of ACQ's duty.

38. ACQ violated Section 5 of the FTC Act (and similar state statutes) by failing to use reasonable measures to protect personal financial information and not complying with industry standards. ACQ's conduct was particularly unreasonable given the nature and amount of personal financial information it obtained and stored and the foreseeable consequences of a data breach.

39. ACQ's violation of Section 5 of the FTC Act (and similar state statutes) constitutes negligence *per se*.

40. Class and Subclass members are consumers within the class of persons Section 5 of the FTC Act (and similar state statutes) was intended to protect.

41. The harm that has occurred is the type of harm the FTC Act (and similar state statutes) was intended to guard against. the FTC has pursued more than 50 enforcement actions against businesses which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Traver and the Class and Subclass. Plaintiffs and the Class.

42. As a direct and proximate result of ACQ's negligence, Traver and Class and Subclass have been injured as described above, and are entitled to damages, including compensatory, punitive, and nominal damages, in an amount to be proven at trial.

<u>**Count 3**</u>
**Breach of Contract**
**By Data Breach Class and Utah Subclass**

43. Traver restates paragraphs 1 – 27 above as if fully set forth.

44.    Traver's third legal claim is for breach of contract. It is brought on behalf of the Data Breach Class and Utah Subclass.

45.    ACQ's  Privacy Policy is an agreement between ACQ and individuals who provided their personal financial information to ACQ, including Traver and Class and Subclass members.

46.    ACQ's  Privacy Policy states, among other things, that, "[t]o protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards …"

47.    Traver and Class and Subclass members on the one side and ACQ on the other formed a contract when Traver and Class and Subclass members applied for a loan from ACQ or otherwise provided personal financial information to ACQ subject to its Privacy Policy.

48.    Traver and Class and Subclass members fully performed their obligations under the contracts with ACQ.

49.    ACQ breached its agreement with Traver and Class and Subclass members by failing to protect their personal financial information. Specifically, it (1) failed to take reasonable steps to use safe and secure systems to protect that information; and (2) failed to have appropriate security protocols and measures in place to protect that information, such as adequate internal and external firewalls, physical security, technological security measures, and encryption.

50.    As a direct and proximate result of ACQ's breaches of contract, Traver and Class and Subclass members sustained actual losses and damages as described in detail above, and are also entitled to recover nominal damages.

**Count 4**
**Breach of Implied Contract**
**By Data Breach Class and Utah Subclass**

51.     Traver restates paragraphs 1 – 27 above as if fully set forth.

52.     Traver's fourth legal claim is for breach of implied contract. It is brought on behalf of the Data Breach Class and Utah Subclass.

53.     Traver and Class and Subclass  members entered into an implied contract with ACQ when they sought loan services from ACQ or otherwise provided personal financial information to ACQ subject to its Privacy Policy.

54.     As part of these transactions, ACQ agreed to safeguard and protect the personal financial information of Traver and Class and Subclass members and to timely and accurately notify them if their Personal Information was breached or compromised.

55.     Traver and Class and Subclass members entered into the implied contracts with the reasonable expectation that ACQ's data security practices and policies were reasonable and consistent with industry standards. Traver and Class and Subclass members believed that ACQ would use part of the monies paid to ACQ under the implied contracts to fund adequate and reasonable data security practices.

56.     Traver and Class and Subclass members would not have obtained ACQ's loan services or provided and entrusted their personal financial information to ACQ, in the absence of the implied contract or implied terms between them and ACQ. The safeguarding of the personal financial information of Traver and Class and Subclass members and prompt and sufficient notification of a breach was critical to realize the intent of the parties.

57.     Traver and Class and Subclass members fully performed their obligations under the implied contracts with ACQ.

58.     ACQ breached its implied contracts with Traver and Class and Subclass members to protect their personal financial information when it failed to have security protocols and measures in place to protect that information.

59.     As a direct and proximate result of ACQ's  breaches of implied contract, Traver and Class and Subclass members sustained actual losses and damages as described in detail above, and are also entitled to recover nominal damages.

<u>**Count 5**</u>
**Unjust Enrichment**
**By Data Breach Class and Utah Subclass**

60.     Traver restates paragraphs 1 – 27 above as if fully set forth.

61.     Traver's fifth legal claim is for unjust enrichment. It is brought on behalf of the Data Breach Class and Utah Subclass.

62.     Traver and Class and Subclass members have an interest, both equitable and legal, in the personal financial information about them that was conferred upon, collected by, and maintained by ACQ.  This personal financial information was conferred on ACQ directly by Traver and Class and Subclass members.

63.     ACQ was benefitted by the conferral upon it of the personal financial information pertaining to Traver and Class and Subclass members and by its ability to retain and use that information. ACQ understood that it was in fact so benefitted.

64.     ACQ also understood and appreciated that the personal financial information pertaining to Traver and Class and Subclass members was private and confidential and its value

depended upon ACQ maintaining the privacy and confidentiality of that personal financial information.

65.     But for ACQ's willingness and commitment to maintain its privacy and confidentiality, that personal financial information would not have been transferred to and entrusted with ACQ.

66.     As a result of ACQ's wrongful conduct as alleged in this Complaint (including among things its utter failure to employ adequate data security measures, its continued maintenance and use of the personal financial information belonging to Traver and Class and Subclass members without having adequate data security measures), ACQ has been unjustly enriched at the expense of, and to the detriment of, Traver and Class and Subclass members. Among other things, ACQ continues to benefit and profit from the sale of the personal financial information while its value to Traver and Class and Subclass members has been diminished.

66.     ACQ's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein, including the compiling and use of Traver and Class and Subclass members' sensitive personal financial information while at the same time failing to maintain that information secure from intrusion and theft by hackers and identity thieves.

67.     Under the common law doctrine of unjust enrichment, it is inequitable for ACQ to be permitted to retain the benefits it received, and is still receiving, without justification, from Traver and Class and Subclass members in an unfair and unconscionable manner. ACQ's retention of such benefits under circumstances making it inequitable to do so constitutes unjust enrichment.

**68.**    The benefit conferred upon, received, and enjoyed by ACQ was not conferred

officiously or gratuitously, and it would be inequitable and unjust for ACQ to retain the benefit.

**69.**    ACQ is therefore liable to Traver and Class and Subclass members for restitution

in the amount of the benefit conferred on ACQ as a result of its wrongful conduct, including

specifically the value to ACQ of the personal financial information.

<u>**Count 6**</u>
**Violation of Utah Consumer Sales Practices Act, Utah Code §§ 13-11-1, *et seq.***
**By Utah Subclass**

**60.**    Traver restates paragraphs 1 – 27 above as if fully set forth.

**61.**    Traver's sixth legal claim is for violation of the Utah Consumer Sales Practice

Act, Utah Code §§ 13-11-1, *et seq.* It is brought on behalf of the Utah Subclass.

**62.**    ACQ is a "person," as defined by Utah Code § 13-11-1(5).

**63.**    ACQ is a "supplier," as defined by Utah Code § 13-11-1(6), because it regularly

solicits, engages in, or enforces "consumer transactions," as defined by Utah Code § 13-11-1(2).

**64.**    ACQ engaged in deceptive and unconscionable acts and practices in connection

with consumer transactions, in violation of Utah Code § 13-11-4 and Utah Code § 13-11-5,

including:

- Failing to implement and maintain reasonable security and privacy measures to protect Traver and Utah Subclass members' personal financial information;
- Failing to identify foreseeable security and privacy risks;
- Failing to comply with common law and statutory duties pertaining to the security and privacy of Traver and Utah Subclass members' personal financial information, including duties imposed by the FTC Act, 15 U.S.C. § 45, and the Utah Protection of Personal Information Act, Utah Code § 13-44- 201;
- Misrepresenting that it would protect the privacy and confidentiality of Traver and Utah Subclass members' personal financial information, including by implementing and maintaining reasonable security measures; and
- Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and Utah Subclass members'

Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, and the Utah Protection of Personal Information Act, Utah Code § 13-44-201.

65.    ACQ's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of ACQ's data security and ability to protect the confidentiality of consumers' personal financial information.

66.    Had ACQ disclosed to Traver and Subclass members that its data systems were not secure and, thus, vulnerable to attack, ACQ would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, ACQ was trusted with sensitive and valuable personal financial information regarding of consumers, including Traver and the Utah Subclass. ACQ accepted the responsibility of being a "steward of data" while keeping the inadequate state of its security controls secret from the public. Accordingly, because ACQ held itself out as having a special role in the financial system with a corresponding duty of trustworthiness and care, Traver and the Utah Subclass members acted reasonably in relying on ACQ's misrepresentations and omissions.

67.    ACQ had a duty to disclose the above facts due to the circumstances of this case, the sensitivity and extensivity of the personal financial information in its possession, and the generally accepted professional standards. This duty is implied by law due to the nature of the relationship between consumers, including Traver and the Utah Subclass, and ACQ because consumers are unable to fully protect their interests with regard to their data, and placed trust and confidence in ACQ.

68.    ACQ intentionally or knowingly engaged in deceptive acts or practices, violating Utah Code § 13-11-4(2) by: a) indicating that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits,

if it has not; b) indicating that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not.

69.     ACQ's acts and practices unjustly imposed hardship on Traver and the Utah Subclass by imposing on them, through no fault of their own, an increased and imminent risk of fraud and identity theft; substantial cost in time and expenses related to monitoring their financial accounts for fraudulent activity; and lost value of their personal financial information.

70.     As a direct and proximate result of ACQ's unconscionable and deceptive acts or practices, Traver and Utah Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their personal financial information.

71.     Traver and Utah Subclass members seek all monetary and non- monetary relief allowed by law, including actual damages, statutory damages of $2,000 per violation, amounts necessary to avoid unjust enrichment, under Utah Code §§ 13-11-19, *et seq.;* injunctive relief; and reasonable attorneys' fees and costs.

**JURY DEMAND**

72.     Traver demands a jury on all issues so triable.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff Traver, on his own behalf and on behalf of the Data Breach Class and Utah Subclass, requests that the Court enter judgment against ACQ as follows:

      **a.**      That the Court certify this action as a class action, proper and maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure; declare that plaintiff is a proper class representative and appoint Plaintiffs' Co-Lead Counsel as Class Counsel;

      **b.**      That the Court grant permanent injunctive relief to prohibit ACQ from continuing to engage in the unlawful acts, omissions, and practices described in this Complaint;

      **c.**      That the Court award Plaintiff and Class and Subclass members compensatory, consequential, general, and nominal damages in an amount to be determined at trial;

      **d.**      That the Court order disgorgement and restitution of all earnings, profits, compensation, and benefits received by ACQ as a result of its unlawful acts, omissions, and practices;

      **e.**      That the Court award statutory damages, trebled, and punitive or exemplary damages, to the extent permitted by law;

      **f.**      That the Court award to Plaintiff the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses;

      **g.**      That the Court award pre- and post-judgment interest at the maximum legal rate; and

…

**h.**     That the Court grant all such other relief as it deems just and proper.

Dated: August 31, 2020

By: */s/Michael J. Watton*
Michael Watton
Utah Bar No. 15806
**WATTON LAW GROUP**
405 South Main Street
Suite 875
Salt Lake City, UT 84111
Tel.:(801) 363-01301
Email: mwatton@wattonlawgroup.com

Jordan Lewis (to be admitted *pro hac vice*)
**JORDAN LEWIS, P.A.**
4473 N.E. 11TH Avenue
Fort Lauderdale, FL 33334
Tel.: (954) 616-8995
Email: jordan@jml-lawfirm.com

***Attorneys for Plaintiff and the Putative Class***