Michael J. Watton
Utah Bar No. 15806
WATTON LAW GROUP
405 South Main Street
Suite 875
Salt Lake City, UT 84111
Tel.:(801) 363-01301
Email: mwatton@wattongroup.com

Jordan Lewis (admitted *pro hac vice*)
JORDAN LEWIS, P.A.
447 N.E. 11TH Avenue
Fort Lauderdale, FL 33334
Tel.: (954) 616-8995
Email: jordan@jml-lawfirm.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| KEVIN M. TRAVER, individually and on behalf of similarly situated individuals;<br><br>Plaintiffs,<br><br>v.<br><br>ACQ HOLDINGS, LLC, d/b/a EASY CASH ASAP, and EASY CASH ASAP, LLC, both Kansas limited liability companies;<br><br>Defendant. | CASE NO. 2:20-cv-00608-DB-CMR<br><br>**PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS AND INCORPORATED MEMORANDUM**<br><br>JURY TRIAL DEMANDED<br><br>Judge Dee Benson<br><br>Magistrate Judge Cecilia M. Romero |

**PLAINTIFF'S MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6) DEFENDANTS' COUNTERCLAIMS FOR FAILURE TO STATE A CLAIM**

Plaintiff, through undersigned counsel, moves the under Fed. R. Civ. P. 12(b)(6) for an Order dismissing with prejudice Defendants' Counterclaims. The motion is supported by the incorporated memorandum of law.

## INCORPORATED MEMORANDUM IN SUPPORT OF MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS

### I. INTRODUCTION

The three Counterclaims filed by defendants ACQ Holdings, LLC and Easy Cash ASAP, LLC are, in a word, surprising. They take the position that plaintiff Kevin M. Traver, whose private confidential information was publicly exposed by defendants' failure to secure its own database, is liable *to them* because he discovered their security breaches. In fact, Traver limited defendants' exposure by informing them of their database's security flaws. For this, defendants have decided to sue him.

Defendants' legal position is more than strategically unsound. The three legal claims they've asserted – under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, the Utah Computer Abuse and Data Recovery Act, Utah Code Ann. §§ 63D-3-101-106, and via common law fraud – cannot succeed. All three claims fail on the pleadings, and their failings can't be fixed by amendment. The Court should dismiss the Counterclaims and force defendants' to properly address the merits of this case.

### II. LEGAL STANDARD

A motion under Fed. R. Civ. P. 12(b)(6) to dismiss a counterclaim for failure to state a claim is brought under the same legal standard as the same motion brought against a plaintiff's

cause of action.[1] Counts I and II of defendants' Counterclaims are subject to the general pleading standard of Fed. R. Civ. P. 8. In conformity with the rule "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "[2] Counterclaim Count III asserts a fraud cause of action, which triggers application of Fed. R. Civ. P. 9(b), which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

### III.  ARGUMENT

A.  **Counterclaim I:** *Violation of Computer Fraud and Abuse Act, 18 U.S.C. § 1030*

Defendants' first legal theory is its Counterclaim for violation of the Computer Fraud and Abuse Act at 18 U.S.C. § 1030.[3] Though defendants don't specify on which paragraph of the Act they rely, they paraphrase[4] § 1030(a)(2), which applies (in relevant part) to

- anyone who intentionally accesses a computer
- without authorization or exceeds authorized access
- and thereby obtains
    - information contained in a financial record of a financial institution

-or-

- information from any protected computer.[5]

Because the Act is a criminal statute, courts should interpret it narrowly.[6]

Turning to the statute, the Counterclaim asserts that plaintiff Traver "intentionally accessed a computer,"[7] satisfying the first element.

---

[1] *See IHC Health Servs. v. Elap Servs., LLC*, 2019 U.S. Dist. LEXIS 170516, *5 (D. Utah Sept. 30, 2019).
[2] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).
[3] Defs.' Counterclaim, Docket Entry #22, ¶¶ 14-27.
[4] *Id.*, ¶ 15.
[5] 18 U.S.C. § 1030(a)(2)(A), (C).
[6] *See Cloudpath Networks v. Securew2 B.V.,* 157 F. Supp. 961, 967 (D. Col. 2016).
[7] Defs.' Counterclaim, Docket Entry #22, ¶¶ 11-12.

As to the second element, defendants acknowledge that Traver was "authorized" to access its information.[8] Thus, defendants can only state a claim if Traver's access exceeded what it authorized. They cannot. Explained one district court:

> The statutory text is less clear, however, when it comes to the entire phrase "accesses a computer without authorization." The CFAA does not define this phrase, but "the wording of the statute, forbidding 'access[] . . . without authorization,' . . . suggests a baseline in which access is not generally available and so permission is ordinarily required." hiQ Labs, Inc.[ v. LinkedIn Corp., 938 F.3d 985, 1000 (9th Cir. 2019).] This wording thus contemplates a view of the internet as divided into at least two realms—public websites (or portions of websites) where no authorization is required and private websites (or portions of websites) where permission must be granted for access. Because many websites on the internet are open to public inspection, a website or portion of a website becomes "private" only if it is "delineated as private through use of a permission requirement of some sort." Id. at 1001.[9]

By defendants' own admission, the data that Traver accessed was not "private" because he did not require permission to access. All he needed to do was to randomly type numbers – something anyone could do – and where those randomly selected numbers matched another applicant's loan number, the data was revealed.[10] Defendants' claim fails this second element.

The third element requires either that Traver access financial information of a "financial institution" or that he access information from a "protected computer." As to the first half of the third element, defendants do not, and cannot, claim to be a "financial institution." The Act defines a "financial institution" as either

> (A) an institution, with deposits insured by the Federal Deposit Insurance Corporation;
> (B) the Federal Reserve or a member of the Federal Reserve including any Federal Reserve Bank;
> (C) a credit union with accounts insured by the National Credit Union Administration;

---

[8] *Id.* at ¶ 7 ("Once Easy Cash agreed to underwrite Plaintiff's loan, Lend Jet directed Plaintiff to Easy Cash's website to complete the loan process and Easy Cash sent Plaintiff an email with a link to its website for Plaintiff to complete the remainder of his application.").
[9] *Sandvig v. Barr*, 451 F. Supp.3d 73, 85 (D.D.C. 2020).
[10] Defs.' Counterclaim, Docket Entry #22, ¶ 10 ("Plaintiff discovered that if he guessed an account number for another applicant, he could access personal and financial information about that applicant.").

(D) a member of the Federal home loan bank system and any home loan bank;
(E) any institution of the Farm Credit System under the Farm Credit Act of 1971;
(F) a broker-dealer registered with the Securities and Exchange Commission pursuant to section 15 of the Securities Exchange Act of 1934;
(G) the Securities Investor Protection Corporation;
(H) a branch or agency of a foreign bank (as such terms are defined in paragraphs (1) and (3) of section 1(b) of the International Banking Act of 1978); and
(I) an organization operating under section 25 or section 25(a) of the Federal Reserve Act.[11]

As to the second half of the third element, defendants have failed to adequately allege that its computer is a "protected computer." Defendants' allegations on this point is limited to this: "Easy Cash's database is a 'protected computer' under the [Computer Fraud and Abuse Act]."[12] That's not nearly enough:

> Defendant herein asserts that the computer at issue is a "protected computer" as defined by the CFAA. (Am. Countercl. ¶ 134.) However, Defendant alleges no facts to permit such an inference. Instead, Defendant makes a conclusory statement that "[the computers Plaintiff used during her employment with Defendant were] used regularly to . . . conduct business and communicate both throughout the United States and internationally, and, thus, in and affecting interstate or foreign commerce or communication," merely repeating the definition of a protected computer as defined in the Act. (Am. Countercl. ¶ 134.) Inasmuch as Defendant's allegations regarding same mirrors those that have already been rejected by the courts, Defendant cannot sustain its claim that Plaintiff violated 18 U.S.C. § 1030 (a)(2)(C).[13]

In sum, then, defendants' Counterclaim under the Computer Fraud and Abuse Act fails because they cannot show a) that Traver's access was unauthorized and b) that Traver accessed data originating from a "financial institution" or a "protected computer."

B.  **Count II –** *Violation of the Utah Computer Abuse and Data Recovery Act, Utah Code Ann. §§ 63D-3-101-106*

Defendants' second legal theory[14] is a claim for violation of the Utah Computer

---

[11] 18 U.S.C. § 1030(e)(4).
[12] Defs.' Counterclaim, Docket Entry #22, ¶ 18.
[13] *Christian v. Lannett Co.*, 2018 U.S. Dist. LEXIS 52793, *16-17 (E.D. Pa. March 29, 2018).
[14] Defs.' Counterclaim, Docket Entry #22, ¶¶ 28-38.

5

Abuse and Data Recovery Act.[15] The statute provides that

- "[a]n unauthorized user
- of a protected computer
- may not, knowingly and with intent to cause harm or damage
- obtain information from the protected computer and, as a result, cause harm or damage[.]"[16]

Though defendants don't cite specifically to this section of the statute, they paraphrase it,[17] which indicates this is the paragraph through which they seek to prove liability. Here, the problems with the claim mirror those discussed relating to the federal Computer Fraud and Abuse Act. Defendants do not, and cannot, show that Traver was an "unauthorized user" and further cannot show that he accessed a "protected computer."

Start with the statute's definition of an "authorized user." In relevant part, an authorized user is "an individual who has permission to access the protected computer"[18] and where such authority is not "expressly revoke[d]."[19] The problem: Defendants authorized Traver's access[20] and never limited or revoked it. Traver accessed the data through a public-facing URL that anyone could have accessed.[21] Traver doesn't meet the statute's definition of "unauthorized user."

The second failing is that defendants' computer doesn't meet the statute's definition of a "protected computer," which is defined as a computer that "(i) is used in connection with the operation of a business, state government entity, or political subdivision; and (ii) requires a

---

[15] Utah Code Ann. §§ 63D-3-101-106.
[16] Utah Code Ann. § 63D-3-104(1)(a).
[17] Defs.' Counterclaim, Docket Entry #22, ¶¶ 30-33.
[18] Utah Code Ann. § 63D-3-102(1)(b).
[19] Utah Code Ann. § 63D-3-103(3)(a).
[20] Defs.' Counterclaim, Docket Entry #22, ¶ 7.
[21] *See id.*, ¶¶ 9-10.

technological access barrier for an individual to access the computer."[22] The problem: There was no "technological access barrier" that limited access.

In sum, defendants' Counterclaim II fails because it cannot show that Traver was an "unauthorized user" and further can't demonstrate that he accessed a "protected computer."

C.   **Count III –** *Common law fraud*

Defendants' Count III is a common law fraud claim.[23] There are nine elements:

(1) that a representation was made
(2) concerning a presently existing material fact
(3) which was false and
(4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation,
(5) for the purpose of inducing the other party to act upon it and
(6) that the other party, acting reasonably and in ignorance of its falsity,
(7) did in fact rely upon it
(8) and was thereby induced to act
(9) to that party's injury and damage.[24]

As discussed above, this claim is subject to Fed. R. Civ. P. 9(b)'s "particularity" requirements.

This claim fails for a reason similar to the failings of the first two counterclaims. There was no representation of a false material fact. Traver didn't represent that he had authority to access the information when he didn't – *the access was unrestricted*.[25] That element of the fraud claim is missing, and can't be corrected by amendment.

. . .

---

[22] Utah Code Ann. § 63D-3-102(6)(a)(i)-(ii).
[23] Defs.' Counterclaim, Docket Entry #22, ¶¶ 39-48.
[24] *Gaddy v. Corporation of President of Church of Jesus Christ of Latter-Day Saints*, 451 F. Supp.3d 1227, 1234 (D. Utah 2020)(citing *Webster v. JP Morgan Chase Bank, N.A.*, 2012 UT App. 321, ¶ 16, 290 P.3d 930 (Ut. Ct. App. 2012)).
[25] Defs.' Counterclaim, Docket Entry #22, ¶¶ 7-10.

## IV.   CONCLUSION

All three of defendants' Counterclaims are missing elements that must be pled; these errors cannot be corrected through amendment. The Court should dismiss the Counterclaims with prejudice.

Dated: <u>November 9, 2020</u>

By: <u>/s/Michael J. Watton</u>
Michael Watton
Utah Bar No. 15806
**WATTON LAW GROUP**
405 South Main Street
Suite 875
Salt Lake City, UT 84111
Tel.:(801) 363-01301
Email: mwatton@wattongroup.com

Jordan Lewis (admitted *pro hac vice*)
**JORDAN LEWIS, P.A.**
4473 N.E. 11TH Avenue
Fort Lauderdale, FL 33334
Tel.: (954) 616-8995
Email: jordan@jml-lawfirm.com

***Attorneys for Plaintiff and the Putative Class***

## CERTIFICATE OF SERVICE

I, Jessica Renzaglia, certify that on November 9, 2020 I served through the foregoing document through the Court's CM/ECF filing system to the following counsel of record:

| | |
|---|---|
| Berman & Rabin, P.A.<br>Rachel B. Ommerman (admitted *pro hac vice*)<br>15280 Metcalf<br>Overland Park, KS 66223<br>Tel: (913) 777-7121<br>Fax: (913) 652-9474<br>rommerman@bermanrabin.com | Bradley W. Madsen (#13289)<br>Scalley Reading Bates Hansen &Rasmussen, P.C.<br>15 West South Temple, Suite 600<br>Salt Lake City, UT 84101<br>Tel: (801) 531-7870<br>Fax: (801) 326-4669<br>bmadsen@scalleyreading.net |

*/s/Jessica Renzaglia*